# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

| | |
|---|---|
| 60 East 42nd Street, Suite 4510 | Telephone: (212) 317-1200 |
| New York, New York 10165 | Facsimile: (212) 317-1620 |

July 27th, 2018

**VIA ECF**
Hon. Barbara Moses, U.S.M.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    Sarmiento Gil, et al v. West J&R, Inc., et al.,
                17-cv-1988

Your Honor:

      This office represents Plaintiffs in the above-referenced matter. We write jointly with Counsel for Defendants to respectfully request that the Court approve the parties' settlement of the above-referenced matter.

      The parties have agreed to a negotiated Settlement Agreement (the "Agreement") after extensive discovery and settlement discussions. The proposed Agreement is attached hereto as **Exhibit A.** We therefore ask the Court to approve the settlement, which was reached after extensive settlement discussions by the parties, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016).

      While the settlement amount is less than the Plaintiffs' best-case scenario after trial, the amount of the settlement is fair and the result of arm's length bargaining as required by Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012) and Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). For these reasons and based on the reasons set forth below, the Parties jointly and respectfully request that the Court enter an Order approving the settlement as fair and reasonable.

**Background**

      Plaintiffs were hospitality workers who were employed as kitchen staff for the Defendants' Italian restaurant at 342 West 46th Street New York, New York 10036. They were each paid a fixed salary and alleged a violation of the NY Hospitality Wage Order that allegedly did not provide a premium for hours that were worked over 40 in a week, *inter alia*.

      Defendants disputed the hours worked by the Plaintiff and raised a credible argument regarding whether Plaintiff Luis Saquipulla qualified under the executive exception. Defendants claimed that Plaintiff was employed as an executive chef with authority to hire, fire and train other employees, and as a result, was exempt from overtime pay under the FLSA and NYLL. Both arguments, regarding hours worked and the potential exemption defense, would, if credited by a

Hon. Barbara Moses
July 27th, 2018
Page 2 of 5

trier of fact, result in a recovery substantially smaller than that offer under the Plaintiffs' best case scenario.

Defendants did present a selection of time records that challenged Plaintiff's recollection of hours worked.

There is also the perennial issue of collectability that hovers over FLSA cases. The predicate business – Da Rosina – is closed and has been for some time. The sole source of collection for practical purposes would be from the personal assets of Defendant Geminiano Sanz himself.

Credible or not – it has been the experience of Plaintiff's counsel that collecting on FLSA lawsuits can often be difficult due to the lack of insurance policy coverage for these violations such that even solvent and operating businesses can often delay or frustrate collection efforts.

**Settlement**

In light of the risks and burden of trial, the parties have agreed to settle Plaintiffs' claims for $325,000.00 inclusive of attorney's fees/costs payable as per the attached Settlement Agreement. **See Exhibit A** *Settlement Agreement*. The Agreement was reached after extensive back and forth negotiations prior to trial which included extensive discussions before Your Honor. This ultimate settlement value is within the range of values discussed at the last settlement conference.

Under Plaintiff's best-case scenario as per anticipated testimony and argument of counsel, Plaintiffs would be entitled to $457,816.00 in back wages before liquidated damages, spread of hours pay, statutory violations, attorneys' fees and pre-judgment interest. The grand total for Plaintiffs would be $1,155,411.78 after including all of the pertinent damage categories Plaintiffs could seek at trial. **See Exhibit B** *Damages Chart*.

Two Hundred Sixteen Thousand Seven Hundred Forty-Five Dollars ($216,745.00) of the settlement amount will be paid to the Plaintiffs themselves to be distributed pro rata according to their relative unpaid wages as alleged in the Complaint. The remaining third of the settlement One Hundred Eight Thousand Two Hundred Twenty-Five Dollars ($108,225.00) will be applied as attorneys' fees and costs, subject to the court's review and approval.

There is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (*quoting* Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* (*quoting* Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). Courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement

will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky, 900 F.Supp.2d at 225 (*quoting* Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to Plaintiffs. Plaintiffs have been represented by experienced counsel throughout this lawsuit and has made an informed decision to settle the action at this stage of litigation without incurring the costs or risk of trial. *See Meigel v. Flowers of the World NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve settlement.").

The $216,745.00 that they will be receiving amounts is a life-changing amount of money in and of itself while also accounting for 47% of their alleged unpaid wages under their absolute best-case scenario. Plaintiffs could stand the risk of receiving significantly less if they proceed to trial and obtain contrary findings of fact regarding the hours worked along with the ever present risk of compromised collection, if any.

Furthermore, this settlement amount was well within the range discussed during a settlement conference held before Your Honor.

**The Confidentiality and General Release Clause**

Although the Agreement includes a general release clause, this should not prevent the parties from stipulating to dismissal of this matter. The parties are mindful that the Second Circuit's recent *Cheeks* opinion expressed disdain for such provisions in FLSA settlements. 796 F.3d at 206. But *Cheeks* stopped short of holding that these provisions should be a *per se* bar to approval. *See e.g. Souza v. 65 St. Marks Bistro*, 2015 U.S. Dist. LEXIS 151144, *19 (S.D.N.Y. Nov. 6, 2015) (referring to this portion of *Cheeks* as "dicta").

This provision does not render the Agreement unfair. *See generally Souza*, *supra*, 2015 U.S. Dist. LEXIS 151144, *18-24 (approving general release in individual FLSA settlement notwithstanding *Cheeks*). Here, Plaintiffs had an opportunity to "properly value [the] additional claims" covered in the release. Indeed, Plaintiffs' counsel has "inquire[d] of [P]laintiff whether [he] is aware of any other claims … against the employer." *Id.* at 23. Because Plaintiff has not been able to "think of … other claims, … it would be an anomalous result to say that [the] general release is unfair given that the agreement to one amounts to zero cost to that plaintiff as there is no other claim that could be brought." *Id.* Furthermore, in negotiating the Agreement the parties added a mutual release, which the *Souza* court also found to counsel in favor of approval. *Id.* at 18-19 ("[T]he Court is willing to approve the release terms of the settlement in this case, with the modification that the release be mutual in all respects.").

Hon. Barbara Moses
July 27th, 2018
Page 4 of 5


**Plaintiff's Attorneys' Fees Are Fair and Reasonable**

Under the settlement, Plaintiffs' counsel will receive $108,225.00 from the settlement fund as attorneys' fees and costs, subject to review and approval of the court. This represents one third of the recovery in this litigation.

The amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See* Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also* Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' counsels' requested award is reasonable. *See* Alleyne v. Time Moving & Storage Inc., 264 F.R.D. at 60; *see also* McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

Given Plaintiffs' counsels' significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain a favorable pre-trial result due to the parties' cooperative exchange of information and frequent negotiations. A brief biography of each attorney who performed billed work in this matter is as follows:

- Mr. Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. His work is billed at $450 per hour. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. (Insert other cases that have approved this rate)

- Colin Mulholland is an associate with Michael Faillace & Associates since May of 2017. He has been practicing law since February of 2013. At his first firm, Heriberto A. Cabrera & Associates, Mr. Mulholland was the lead civil litigator on dozens of civil lawsuits which included over a dozen FLSA/NYLL claims where he performed as lead counsel for three and a half years. He was an associate with Michael Lamonsoff & Associates for one year where he managed a case load of over 100 personal injury lawsuits. Since joining Faillace's firm, Mr. Mulholland has obtained the largest trial verdict in the history of the firm after a jury trial before Judge Richard Sullivan for over $2.2 million dollars. He bills at a rate of $350 per hour.

Hon. Barbara Moses
July 27th, 2018
Page 5 of 5

It is fair and reasonable for Plaintiff's attorneys to receive one-third of the total settlement amount as an approximately 5x multiplier of counsels' lodestar calculation.  **See Exhibit C** *Counsel's Lodestar Calculation*.

On the issue of lodestar multipliers, Judge Abrams recently collected cases and opined that: "When using a "percentage of the fund" approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.' *Meza v. 317 Amsterdam Corp.,* No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015). {…} Even accepting the hours and fees requested by Plaintiff's counsel as accurate and reasonable, the fee award requested here has a lodestar multiplier of 5.23. This multiplier is on the high end of those generally allowed in this Circuit, but it is not unheard of. *See Johnson v. Brennan,* No. 10-CV-4712 (CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); *see also Shapiro v. JPMorgan Chase & Co.,* No. 11-CV-7961 (CM), 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed `common' by courts in this District."). Assuming the multiplier here is somewhat higher than normally awarded, this Court nonetheless recognizes the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." Pinzon v. Jony Food Corp., et al., No. 18-cv-105 (RA) S.D.N.Y. May 24th, 2018.

While the amount of the settlement that is going to attorneys' fees is more than the lodestar amount, " 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff," Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (quoting Farrar v. Hobby, 506 U.S. 103,114 (1992)).

Here, Plaintiffs' counsel litigated the Plaintiffs' claims to the very threshold of trial and were thus able to secure an objectively high recovery for each of the Plaintiffs without unduly exposing the Plaintiffs to a contrary finding of fact at trial regarding their hours worked. Furthermore, the approval of a one-third fee in this matter would contribute greatly to encouraging the plaintiffs' bar to accept reasonable settlements prior to trial so as to alleviate congestion in the court's trial docket.

**Conclusion**

In full consideration of the issues presented in *Cheeks* and *Wolinsky,* we believe that the parties' Agreement is fair and reasonable, and that the settlement should be approved.  A copy of the parties' Agreement is submitted herewith.

Thank you for your consideration in this matter.

Respectfully Submitted,

/s/ Colin Mulholland, Esq.
Michael Faillace, Esq.

Hon. Barbara Moses
July 27th, 2018
Page 6 of 5

                                                Michael Faillace & Associates, P.C.
                                                *Attorneys for Plaintiff*

cc:    Defendants' Counsel (via ECF)